UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:05CV-108-R

IN RE:

LWD, INC.
LWD FIELD SERVICES, INC.
LWD LAND COMPANY, INC.
LWD EQUIPMENT, INC.
LWD TRUCKING, INC.
LWD SANITARY LANDFILL, INC.
GENERAL ENVIRONMENTAL SERVICES, INC.                                    DEBTORS


K & B CAPITAL, LLC,                                                     APPELLANT

v.

OFFICIAL UNSECURED CREDITOR'S COMMITTEE                                 APPELLEE

**MEMORANDUM OPINION**

This matter is before the court on appeal from the Bankruptcy Court's February 10, 2005 Memorandum/Opinion and Order entering judgment after the trial in this case, as well as the Bankruptcy Court's March 24, 2005 Order denying Appellant-Defendant's motion seeking a new trial, to alter or amend the judgment, and to stay enforcement of the judgment. Appellants (Dkt. # 4) and Appellees (Dkt. # 5) have filed briefs, and this matter is ripe for decision. For the reasons set forth below, the Court **AFFIRMS** the judgment of the Bankruptcy Court and **DISMISSES** the appeal.

**PROCEDURAL BACKGROUND**

This case arises out of several bankruptcy petitions, all eventually brought under Chapter 11 and consolidated for joint administration pursuant to Federal Rule of Bankruptcy Procedure

1

1015(b).  The Debtors operated as debtors-in-possession, and the Bankruptcy Court appointed an Unsecured Creditors' Committee ("Committee").  On November 26, 2003, the Debtors filed a motion seeking sale of substantially all of the Debtors' assets under 11 U.S.C. § 363.  The parties negotiated the terms of the auction, including a Term Sheet ("Term Sheet") approved by the Bankruptcy Court on February 23, 2004.  According to the fact stipulated by the parties as summarized by the Bankrupty Court, one consequence of the agreements in the Term Sheet was that "[K&B's] allowed secured claim and credit bid were fixed and limited (except that [K&B] could be reimbursed up to $75,000.00 for certain new advances through the auction sale) to the amounts provided thereunder."  (Opinion, at 6).  The auction was held on March 9, 2004, and K & B Capital, LLC ("K&B"), which was a secured creditor of the debtors because it acquired outstanding debt, secured by most of the Debtors' assets, owed by the Debtors to Bank One, was the successful bidder.  K&B's purchase price was $2,555,000.00, which included the $1.75 million credit bid allowed under the Terms Sheet.  The second-highest offer at the sale was a bid by Purchase Area Disposal Services, LLC ("PAD"), which bid $2.4 million dollars.  On March 10, 2004, the Bankruptcy Court provisionally approved the sale and scheduled a final hearing on March 18, 2004.

Thereafter, on March 23, 2004, the Bankruptcy Court entered a final sale order which approved and confirmed the sale to K&B and authorized the second-highest bidder, PAD, to acquire the assets in the event K&B was unable to close.  On March 24, 2004, the Bankruptcy Court entered an order requiring K&B to submit an accounting of funds paid to it by any debtor entity from January 1, 2004 through March 31, 2004.  K&B closed on March 25, 2004.  On June 16, 2004, the Committee filed a motion:

> ...seeking redress of two matters: (i) K&B's improper secreting of over $476,500 of cash assets away from the Debtors prior to the sale (thereby precluding the sale of such assets and chilling the auction), which payments constituted avoidable postpetition transfers under section 549 of the Bankruptcy Code; and (ii) the failure to disclose the existence and the value of a closure insurance policy having hundreds of thousands of dollars of prepaid premiums, thereby precluding the marketing and sale of this policy or (if a sale was unsuccessful) the cancellation of this policy (and return of significant funds to the Debtors' estate) and resulting in an improper windfall to K&B in violation of sections 105 and 363 of the Bankruptcy Code.

("Committee's Motion for Relief")(Appellant's Brief, Dkt. # 5, at 9). After responsive filings, the Bankruptcy Court held a trial on October 27, 2004 to hear evidence on the issues raised in that motion. After the trial, the parties filed briefs supporting their positions on the issues, and on February 10, 2005, the Court issued its opinion and judgment. K&B filed its motion seeking reconsideration, and on March 24, 2005, the Court denied the motion. On April 5, 2005, K&B noticed its appeal of that decision.

## FACTUAL BACKGROUND

The Debtors are various entities that operated environmental-related businesses in Western Kentucky; primarily, they operated an industrial incinerator and a landfill operation. They were in default on various loan obligations to Bank One, and the businesses were struggling. The loan obligations were such that "Bank One had essentially seized the assets of LWD when K&B acquired the position of Bank One in January 2003." (Appellee's Brief, Dkt. # 4, at 7). After K&B became involved, it began loaning considerable amounts of money to the various entities in order to keep them up and running. As a result, the collateral K&B held after its acquisition from Bank One was diminished in value, and the Bankruptcy Court entered an order (the "Cash Collateral Order") allowing the Debtors to make "adequate protection payments" to K&B of up to $35,000.00 per week. The order was to remain in effect until

modified by order of the Bankruptcy Court.  These payments are the subject of the first issue in the Committee's Motion for Relief.

The second issue deals with a pre-paid closing insurance policy which the Committee alleged, and the Bankruptcy Court found, was maintained by the Debtors and was not adequately disclosed by the Debtors and K&B prior to the March 25, 2004 closing.  Specifically, the Bankruptcy Court found that in failing to adequately disclose the policy, K&B subverted the auction process because it (i) received the asset for inadequate consideration, in violation of the provisions of the Bankruptcy Code; and (ii) deprived the estate of a valuable asset.

## STANDARD OF REVIEW

This Court reviews a Bankruptcy Court's factual findings under a "clearly erroneous" standard.  *See In re Rexplore Drilling, Inc.*, 971 F.2d 1219, 1224 (6th Cir. 1992).  A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed."  Bankruptcy Rule 8013; *In re Fred Hawes Org.*, 957 F.2d 239, 242 (6th Cir. 1992) (*quoting Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)).  "This circuit has clearly enunciated that findings of facts of a bankruptcy court should not be disturbed . . . unless there is 'most cogent evidence of mistake or miscarriage of justice.'"  *In re Edward M. Johnson and Assocs.*, 845 F.2d 1395, 1401 (6th Cir. 1988).  Conclusions of law are reviewed de novo.  *See In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001).  If a question is a mixed question of law and fact, then the court must break it down into its constituent parts and apply the appropriate standard of review for each part.  *See In re Batie*, 995 F.2d 85, 88-89 (6th Cir. 1993)

## DISCUSSION

**Timeliness**

The Committee argues that the appeal in this case should be dismissed because, although the notice of appeal was timely filed, K&B's brief was not filed within the time period allowed by the rules. The Committee is correct when it observes that K&B's brief was filed *well* beyond the time limitation established by the Bankruptcy Rules (43 days beyond the June 2, 2005 deadline). The Committee is also correct that K&B has not given any reason, excusable neglect or otherwise, for this delay. Nevertheless, the Court is hesitant to dismiss the appeal solely on these grounds. Consequently, the Court will examine the merits of K&B's appeal.

**Adequate Protection Payments**

In its February 10 opinion, the Bankruptcy Court held that the Adequate Protection Payments were made in violation of 11 U.S.C. § 549(a), which provides in relevant part that a "trustee[1] may avoid a transfer of property of the estate ... that is not authorized under this title or by the court." The Committee based its argument that the transfers were unauthorized on the fact that they were not included in the Term Sheet signed on February 23, 2004. K&B argued that (i) most of the payments were authorized because they were authorized by the Cash Collateral Order and (ii) the remaining payments were authorized because they were actually payments for trucks K&B leased to the Debtors. K&B argues that the Bankruptcy Court's opinion on the Adequate Protection Payments erred in that it held that the Terms Sheet unambiguously terminated the Adequate Protection Payments and it included the transfers that occurred between the sale and the closing of the sale. The Bankruptcy Court held that the Term

---

[1] The Bankruptcy Court held, and neither party disputes, that the Committee is a proper stand-in for a trustee in this situation.

Sheet

> makes it obvious that the parties intended the document to establish firmly the amount of Defendant's secured claim against Debtors as of [] January 20, 2004; the manner by which Defendant could recoup the amount of its secured claim; and the extent [to] and manner in which Defendant could recoup any advances of funds to Debtors made after January 20, 2004.

(Opinion, at 11). The Bankruptcy Court concluded that that "[b]ecause it settled conclusively all of [K&B's] claims against Debtors, the Term Sheet clearly operated to supersede and replace the interim Order Authorizing Use of Cash Collateral." (*Id.*)

K&B argues that this is an erroneous legal conclusion because the Term Sheet does not say explicitly that it overrules the Cash Collateral Order. K&B argues that this failure creates an ambiguity in the language of the Term Sheet, and that the construction of the Term Sheet should therefore be determined by examining extrinsic (i.e., testimonial) evidence of the parties' intent. It further argues that such evidence supports its assertion that the authorization contained in the Cash Collateral Order survived the execution of the Term Sheet. The Bankruptcy Court disagreed on both counts: it held that there was no ambiguity in the Term Sheet, and it alternatively held that, even if there were an ambiguity, the evidence offered by K&B (essentially, the testimony of Robert Kattula and Dan Sills) was insufficient to demonstrate the parties' intent that the Cash Collateral Order authorization survive the Term Sheet.

K&B offers no case law or statutory support for its argument that the Bankruptcy Court's interpretation of the Term Sheet was erroneous. Although this Court reviews the Bankruptcy Court's interpretation *de novo*, the simple fact that the Term Sheet did not speak expressly to the status of the Cash Collateral Order does not preclude a finding that the Term Sheet clearly supplanted it. Indeed, the Court agrees that the comprehensive nature of the Term Sheet's

approach to the financial relationship between K&B and the Debtors indicates that it *does* supersede the Cash Collateral Order.  Therefore, the Court agrees with the Bankruptcy Court that the testimony of K&B's witnesses, Kattula and Sills, is not relevant to the issue of whether the payments were authorized by an order of the Bankruptcy Court.  Therefore, the Bankruptcy Court correctly directed repayment of the funds pursuant to 11 U.S.C. § 549(a).

**Closure Insurance Policy**

K&B argues that the Bankruptcy Court erred when it found that K&B and the Debtors failed adequately to disclose the existence of the Closure Insurance Policy.  The Bankruptcy Court, pursuant to its power granted under 11 U.S.C. § 105(a) to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The Bankruptcy Court said that its concern was "whether an important process envisioned by the Bankruptcy Code, sales under 11 U.S.C. § 363, has been subverted and the judicial process abused."  (Opinion, at 15).  In order to determine whether K&B's and the Debtors' handling of the Closure Insurance Policy had this effect, the Bankruptcy Court faced the issue of "whether Debtors disclosed the asset in a manner sufficient to allow potential bidders to value it properly and bid for it on a footing equal to that of the insider Defendant."  (*Id.*)  Ultimately, the Bankruptcy Court held that K&B and the Debtors did fail to adequately disclose the policy, and that this failure deprived the Debtors' estate of the opportunity to sell the asset at its fair market value.  (*Id.* at 16).  In so holding, the Bankruptcy Court relied on stipulated facts regarding the disclosure of the existence of the policy, as well as testimony it heard at the trial.

On appeal, K&B argues that the Bankruptcy Court's holding constitutes error in that it was not supported by the evidence, and it argues that the remedy fashioned by the Bankruptcy

Court (its calculation of the amount K&B is required to pay back to the estate) was unreasonable. For its argument that the Bankruptcy Court's holding was unsupported, K&B cites evidence: that Mr. Sills "was cooperative with the Committee's CPA" (Dkt. # 4 at 17); that the Debtors themselves did not prepare the summary of insurance; that the policies were not in the Debtors' possession; that Mr. Sills "was very emphatic that he did not receive instructions from anyone to withhold information concerning the insurance coverage" (*Id.* at 18); that Clearbid received the summary of insurance and "was ... made aware of the closure assurance accounts" (*Id.*); and that Clearbid failed to request copies of the policy from the insurer. Even taken together, however, this evidence is insufficient to leave the Court with the "definite and firm conviction that a mistake has been committed." *In re Fred Hawes Organization*, 957 F.2d 242. In light of the fact that K&B and the Debtors, as insiders, were in a position of superior knowledge and the burden of disclosure was on their shoulders, the Court affirms the Bankruptcy Court's holding that the disclosure was insufficient to meet that burden.

As to the issue of the Bankruptcy Court's remedy, K&B argues that the method adopted by the Bankruptcy Court to determine the "surrender value" of the Closure Insurance Policy (essentially, determining the amount that would have been paid for the policy by a "hypothetical, fully informed, independent third party" (Opinion, at 16)) is "flawed" because it "totally ignores the uncontroverted testimony of Dan Sills ... that the policy is not convertible" and it "double[s] the amount the Committee had previously argued." (Dkt. # 4, at 20). K&B also argues that the Court's calculation method was "highly speculative" and that this constitutes an abuse of discretion.

As to K&B's argument that the Bankruptcy Court's method improperly fails to account

8

for Mr. Sills's testimony regarding the convertibility of the policy, the fuller description of the policy contained in the Committee's brief (Dkt. # 5, at 20-21) indicates that the Bankruptcy Court's interpretation of the policy is correct. Further, the Bankruptcy Court's calculations were based on the refund value of the policy to a purchaser, and uses the national prime interest rate and the Federal Judgment Rate to adjust that value. These decisions are reasonable and do not constitute an abuse of the Bankruptcy Court's discretion.

**Attorney Fees**

K&B states that it appeals the portion of the Bankruptcy Court's opinion dealing with attorney fees "in order to preserve error." (Dkt. # 4, at 22). The Bankruptcy Court did not rule on the issue of whether either party was entitled to attorney fees; rather, it specified the method by which the issue of attorney fees should be raised. K&B does not argue that the Bankruptcy Court's statement that such a motion would be the appropriate method for raising such an issue is error; the Bankruptcy Court's opinion makes no other statement on the issue of attorney fees that is reviewable by this Court.

**Failure to Grant the Reconsideration Motion**

In light of the foregoing, the Bankruptcy Court did not err in denying K&B's Reconsideration Motion. There was no clear error of law or fact and K&B was not entitled to the relief it sought.

## CONCLUSION

For the reasons discussed above, the Court **AFFIRMS** in all respects the opinion of the Bankruptcy Court and **DISMISSES** K&B's appeal.