UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:05-CV-108

IN RE:

| | |
|---|---|
| LWD, INC. | |
| LWD FIELD SERVICES, INC. | |
| LWD LAND COMPANY, INC. | |
| LWD EQUIPMENT, INC. | |
| LWD TRUCKING, INC. | |
| LWD SANITARY LANDFILL, INC. | |
| GENERAL ENVIRONMENTAL SERVICES, INC. | DEBTORS |

| | |
|---|---|
| K&B CAPITAL, LLC | APPELLANT |

v.

| | |
|---|---|
| OFFICIAL UNSECURED CREDITORS' COMMITTEE | APPELLEE |

### MEMORANDUM OPINION

This matter is before the Court on K & B Capital's ("K & B") Motion for Reconsideration of this Court's Order affirming the Bankruptcy Court's judgment denying K & B's motion seeking a new trial, alteration or amendment of the judgment, or stay of enforcement of the judgment. (Docket # 15 and 16). The Official Unsecured Creditors' Committee (the "Creditors") responded (Docket # 17), and K & B filed a Reply. (Docket # 18). The Court now DENIES K & B's Motion for Reconsideration.

### BACKGROUND

This case arises from the bankruptcies of several related companies: LWD, Inc.; LWD Field Services, Inc.; LWD Land Company, Inc.; LWD Equipment, Inc.; LWD Trucking, Inc.; LWD Sanitary Landfill, Inc. (collectively the "LWD Defendants"); and General Environmental Services, LLC ("GES"). Prior to the filing of the bankruptcies, most of LWD's assets had been

seized by Bank One, a creditor. K&B then purchased Bank One and began loaning large amounts of money to the LWD entities to avoid bankruptcy. Because of these loans, the collateral K&B purchased from Bank One diminished in value by the time bankruptcy proceedings began. The Bankruptcy Court entered an Order (the "Cash Collateral Order") allowing "adequate protection payments" to Debtors of up to $35,000 a week. The Order was to remain in effect until the Bankruptcy Court modified it during the ensuing bankruptcy proceedings.

The LWD Defendants originally were involved in Chapter 7 bankruptcies, but consented to convert the proceedings to Chapter 11 bankruptcies. These proceedings were ordered to be jointly administered with the Chapter 11 bankruptcy proceedings for GES on September 11, 2003. Under the lead case number for LWD, Inc., a Creditor's Committee was appointed for the joint administration of the bankruptcies.[1]

On January 27, 2004, the Bankruptcy Court Ordered the Debtors to sell substantially all their assets pursuant to Title 11 United States Code Section 363. This Order (the "Final Sale Order") authorized the sale of property "free and clear of all liens, tax lies, claims, and encumbrances."[2] A Term Sheet was drawn up to dictate the terms of the Auction on February

---

[1] K&B contests that the Creditors' Committee represents all Defendants because it was solely filed under the lead case number for LWD, Inc. However, as the Court held in a related appeal, it is permissible to appoint a joint committee in this case, the Bankruptcy Court clearly intended the joint appointment of a committee, and it was impossible under the filing system to notice for the appointment of separate committees under the other case numbers.

[2] K&B has argued that the Bankruptcy Court authorized the sale of the Debtors' Chapter 5 claims to the highest bidder. When these claims were asserted against K&B by the Committee, K&B argued that the Committee no longer had the right to assert Chapter 5 claims. As the Court held in its earlier Opinion on a related appeal, Chapter 5 claims are not legally saleable. Thus, the Committee's claims were properly filed.

At the time the sale was completed, the Bankruptcy Court entered a Supplemental Sale

23, 2004.  Under the Term Sheet, a bidder's "allowed secured claim and credit bid were fixed and limited (except that the bidder could be reimbursed up to $75,000.00 for certain new advances through the auction sale) to the amounts provided thereunder."  The Term Sheet was detailed and purported to govern the entirety of issues surrounding the auction and required disclosure of all asset transfers of the Debtors before the sale.  On March 9, 2004, K&B successfully bid $2,555,000.00 for the assets of the Debtors, which included the $1.75 million credit bid allowed under the Term Sheet.  The second-highest offer at the sale was a bid by Purchase Area Disposal Services, LLC, for $2.4 million, and the Bankruptcy Court ordered that it could purchase the Debtors' assets if K&B could not successfully complete the transaction.  The Bankruptcy Court subsequently approved the sale.  On March 24, 2004, the Bankruptcy Court ordered K&B to submit an accounting of funds paid to it by any debtor entity from January 1, 2004, through March 31, 2004.

On June 16, 2004, the Committee filed a Motion claiming that K&B secreted over $476,500 in cash assets of the Debtors prior to the sale which were not disclosed at the auction and that the transfer violated Section 549 of the Bankruptcy Code.  These cash assets were the moneys paid as collateral under the Cash Collateral Order.  The Committee also alleged that the Debtors failed to disclose an existing insurance policy worth hundreds of thousands of dollars in prepaid premiums.  The Committee contended that the disclosure of the money and insurance policies would have raised the bid prices at the auction for other bidders, that the transfer of the assets and policies constituted an unfair windfall to K&B, and that K&B's nondisclosure and possession of these assets deprived the estate of its rightful property.  The Bankruptcy Court held

---

Order reiterating that the Chapter 5 claims were not transferred as a result of the auction.  As the Court held in its previous rulings, this Order was effective.

a hearing on this issue on October 24, 2004, and ruled for the Committee on February 10, 2005. This ruling Ordered K&B to return $828,875 to the Debtors' estates. The Bankruptcy Court held that the Term Sheet supplanted the terms of the Cash Collateral Order and held that the insurance and cash assets should have been disclosed before the sale pursuant to the Term Sheet. The Bankruptcy Court also denied a Motion to Reconsider it's ruling.

K&B then appealed the Bankruptcy Court's ruling. Though the Appeal was held to be untimely, this Court also ruled on the merits of K&B's claims. The Court found that the Bankruptcy Court properly held a hearing on the Committee's claims and properly found that assets had been improperly secreted against the rules set forth in the Term Sheet, and that K&B was required to return the assets contested by the Committee to the Debtors' estate. K&B now moves the Court to reconsider its appellate ruling, claiming both that this Court did not have subject matter jurisdiction over the appeal and that the Bankruptcy Court's ruling was not an appealable Order.

## STANDARD

While the Bankruptcy Rules provide no explicit standard for a rehearing of an appealed issue, courts often look to Federal Rule of Appellate Procedure 40(a) for guidance, which provides: "the petition must state with particularity each point of law or fact that a petitioner believes the court has overlooked or misapprehended and must argue in support of the petition." *In re Wingspread Corp.*, 186 B.R. 803 (S.D.N.Y. 1995). Other courts applied the traditional tests of an intervening change in controlling law, the availability of new evidence and the need to correct a manifest injustice. *In re Environcon Int'l Corp.*, 218 B.R. 978, 979 (M.D. Fla. 1998); *Shawnee State Bank v. First Nat'l Bank (In re Winders)*, 202 B.R. 512, 517 (D. Kan. 1996).

# ANALYSIS

## I.      Scope of Appeal

The Committee contends that some issues raised in this Motion for Reconsideration were not raised in the original appeal and were not preserved for reconsideration here. *See Zegeye v. Keshishian (in re Zegeye)*, No. DKC 2004-1387, 2005 U.S. Dist. LEXIS 3463 at *6 (D. Md. March 4, 2005) (citing *Sierra Club v. Hodel*, 848 F,2d 1068, 1100-01 (10th Cir. 1988)). In particular, the Committee notes that K&B did not initially challenge the standing of the Committee to bring suit on behalf of all Debtors and did not initially challenge the finality of the February 10 Order. The Court has already determined, in a related appeal, that the Committee did have standing to challenge K&B's actions in the bankruptcy proceedings. Although the appealability of the February 10 Order was not initially challenged, the Court addresses the appealability because it affects the Court's subject matter jurisdiction over the appeal. Although the argument was not made in the first appeal, challenges to subject matter jurisdiction may not be waived. *United States v. Hays*, 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed. 2d 635 (1995); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1137-38 (6th Cir. 1991).

## II.     Standing of the Creditors' Committee to Represent the Interests of the Debtors

As the Court held in its prior ruling, the Committee was appointed by the Bankruptcy Court which did and was entitled to act on behalf of all Debtors in this matter. In the Court's prior ruling on K&B's appeal of the Bankruptcy Court's Order allowing the Committee's substitution of counsel, it was determined that K&B has shown no conflict or prejudice by the representation of the Debtors by a single committee, that noticing for separate committees was not practicable, and that it was the Bankruptcy Court's intent to appoint a combined committee with creditors representative of all the Debtors' estates. For this reason, K&B's argument that

the Committee did not have standing to challenge the transfers of money and insurance between K&B and any Debtors other than LWD, Inc., has been addressed. The Committee did have standing to address violations of the Term Sheet relating to all Debtors in this matter.

### III.   Standing of the Committee to Bring Claims against K&B under Chapter 5

K&B then challenges the Committee's statutory standing to bring any Chapter 5 claims. K&B asserts that the Chapter 5 claims were transferred as part of the bankruptcy estates. The Court has held, in a prior related appeal, that the Chapter 5 claims were not legally saleable and that the right to assert Chapter 5 claims remained rightfully with the Committee. For this reason, K&B's claim that the Committee did not have statutory standing to assert Chapter 5 claims is now moot.

### IV.   Standing to Appeal the Rights of Debtors Asserted Before the Bankruptcy Court

K&B then argues that the Committee does not have standing to appeal the Bankruptcy Court's ruling on its own behalf. K&B contends that the Committee initially asserted, and the Bankruptcy Court ruled upon, the rights of the estate of LWD, Inc., not the rights of the Committee of creditors of LWD and the other Debtors.

The Committee notes that the Bankruptcy Court explicitly granted the Committee the right to enforce the rights of the Debtors, including GES, in Stipulated Order, stating "The Debtors agree that Chapter 5 causes of action under the Bankruptcy Code, if any, may be prosecuted jointly and/or individually by the Debtors and/or any Creditors' Committee appointed in these cases without further order of the Court." In its Order of February 10, 2005, the Bankruptcy Court reaffirmed the Committee's derivative standing in the matter, and noted that no party objected to it.

The Committee:

>May have derivative standing to initiate an avoidance action where
>1) a demand has been made upon the statutorily authorized party to take action;
>2) the demand is declined;
>3) a colorable claim that would benefit the estate if successful exists, based on a cost-benefit analysis performed by the court; and
>4) the inaction in an abuse of discretion ("unjustified" in light of the debtor-in-possession's duties in a Chapter 11 case. A creditor has met its burden to show standing to file an avoidance action if it has fulfilled the first three requirements and the trustee or debtor-in-possession declined to take action without stating a reason. The burden then shifts to the debtor-in-possession to establish, by a preponderance of the evidence, that its reason for not acting is justified.

*In re The Gibson Group, Inc.*, 66 F.3d 1436, 1446 (6th Cir. 1995).

K&B challenges that derivative standing does not exist in this case because the Committee did not make a formal demand for the Debtors to take action and the Debtors did not explicitly refuse.[3]

The Bankruptcy Court found that the Committee satisfied all requirements for derivative standing under *Canadian Pacific Forest Products Limited v. J.D. Irving, Limited*. 66 F.3d 1436 (6th Cir. 1995). That case held that a creditor may meet its burden of unjustified inaction on the part of debtor merely by alleging both the existence of an unpursued colorable claim that would benefit the estate and the debtor's failure to give reason for the inaction, especially when the debtor has a conflict of interest causing it to favor certain creditors. *Id. See also In re The V Cos.*, 292 B.R. 290 (BAP 6th Cir. 2003); *In re Parmetex, Inc.*, 199 F.3d 1029 (9th Cir. 1999) (finding creditor standing in a case brought under 11 U.S.C. § 549). The Bankruptcy Court held that the Debtors in this matter refused to pursue claims against K&B because of severe conflicts

---

[3]K&B also alleges that no colorable action existed because the Chapter 5 actions had been transferred to K&B and because the Committee could not pursue claims on behalf of any Debtors other than LWD, Inc. These arguments have been refuted in prior related appeals before this Court. K&B makes no other argument, viable before this Court, that the claims made by the Committee were not colorable.

of interest; the owners of K&B stood as sole shareholders and directors of the Debtors and made financial decisions on behalf of K&B.

The Court reviews the Bankruptcy Court's determination that the Committee had derivative standing to pursue rights on behalf of its Debtors on a "clearly erroneous" standard. Fed R. Bankr. P. 8013; *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 389 (6th Cir. 1986); *Howard v. Allard*, 122 B.R. 696, 698 (W.D. Ky. 1991). Pursuant to the rule set forth in *Canadian Pacific*, the elements of derivative standing have been satisfied for the Committee to pursue the Chapter 5 claims against K&B.[4]

**V.     Voidness of the Damages under the February 10 Order**

K&B contends that the February 10 Order is void. K&B asserts that the Committee did not properly pursue recovery of the funds from K&B by asserting an action under Title 11 United States Code, Section 549. K&B correctly identifies that an action under Section 549 properly seeks only avoidance of transactions which violated bankruptcy sale rulings, not the recovery of money from improper transactions already completed. Recovery is properly pursued under Section 550. K&B also notes that courts have recognized the difference between recovery and avoidance actions and the actions are subject to separate statutes of limitations. *Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). *See also Gold v. Interstate Fin. Corp. (In re Schmiel)*, 319 B.R. 520, 530 (Bankr. E.D. Mich. 2005) (holding that, where property has

---

[4]While the Committee's derivative standing is already established, the Committee asserts that it would have direct standing as a party to the Term Sheet to enforce that contract. Because K&B's actions violated the disclosure and transfer requirements set forth in the Term Sheet, the Committee may have direct standing to enforce the agreement. However, the Court need not rule on that issue at this time.

already been transferred, an action for recovery is appropriate, not an action for avoidance). Therefore, K&B claims that the issuance of damages under an avoidance action was improper.

The Committee admits that its action was brought under the avoidance statutes, not the recovery statute. However, the Committee argues that its burden of notice pleading was satisfied, because the Bankruptcy Court was aware of the true nature of its claim - to recover assets already transferred to K&B as a result of the auction. The Committee notes that pleadings are construed liberally and need only "'give the defendant fair notice of what [the] claim is and the grounds upon which it rests' by providing 'either direct or inferential allegations respecting all the material elements to sustain a recovery.'" *Excel Energy Inc. v. Smith (In re Commonwealther Institutional Securities, Inc.),* 394 F.3d 401, 405-06 (6th Cir. 2005), *quoting Conley v. Gibson*, 335 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957) and *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 4356 (6th Cir. 1988). Because the Committee's pleading sought the *return* of assets transferred, the Court holds that the burden of notice pleading was satisfied.

## VI.     Appealability of February 10 Order

K&B asserts that the February 10 Order, which it appealed, is not appealable because it did not state that it was a "final judgment" and because it did not resolve all outstanding issues and related proceedings. The February 10 Order did address additional funds, such as escrow funds, that remained to be settled in the matter. K&B contends that these remaining accounts would require an additional hearing before the Bankruptcy Court, and caused the adversary proceeding not to be finalized. *See City of Louisa v. Levi*, 140 F.2d 512, 514 (6th Cir. 1944).

The Committee notes that, to settle the issues remaining in the February 10 Order, K&B was required to complete its duties under the mandates of the Order. The Committee argues that

it is improper for K&B to control when the proceeding is final simply by refusing to comply with the Order. The Committee also notes that the accounts at issue are significantly less than the amount at issue in the adversary proceeding as a whole. Furthermore, K&B's pursuit of those claims would properly be the subject of a separate proceeding, not the adversary proceeding resolved by the February 10 Order. The Court agrees. The February 10 Order was a final and appealable one for the purposes of this action.

## CONCLUSION

For the above reasons, the Court DENIES K&B's Motion for Reconsideration of its Appeal of the Bankruptcy Court's Order of February 10 for reimbursement of funds not disclosed at the auction by the Debtors. An appropriate Order shall follow.